UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GARY DANIEL MOSSOIAN
        Plaintiff,                                CIVIL ACTION NO. 09-14151

    v.                                          DISTRICT JUDGE THOMAS L. LUDINGTON

COMMISSIONER OF                     MAGISTRATE JUDGE VIRGINIA MORGAN
SOCIAL SECURITY,

        Defendant.
_____/

## REPORT AND RECOMMENDATION TO REMAND THIS CASE TO THE AGENCY FOR FURTHER PROCEEDINGS

This is an action for judicial review of defendant's decision denying plaintiff's application for supplemental security income (SSI) disability benefits. Plaintiff filed this action *pro se* but is now represented by an attorney. Each party filed a Motion for Summary Judgment; plaintiff seeks a remand as well as reversal. Plaintiff filed his application for SSI in April, 2006, alleging that he became disabled sixteen years earlier in April, 1990. A previous application from 1996 had been denied. The disability claim on the instant application was based on chronic left knee pain, back problems, high blood pressure and depression. (Tr. 93) His claim was denied initially. At his hearing before the ALJ, plaintiff was not represented by an attorney but appeared with a social worker who had driven him to the hearing. The ALJ determined that plaintiff had severe impairments of back problems and somatoform disorder. The ALJ found that the impairments did not meet the Listings, that plaintiff could not perform any of his past relevant, but could perform a limited range of light work which existed in significant numbers. (Tr. 18) Thus, the ALJ found that plaintiff was not disabled.

1

Plaintiff contends that the decision is not supported by substantial evidence. Specifically plaintiff contends that the normal hearing protocol was not followed, that he was not accorded due process or a full and fair hearing, that the ALJ ignored medical evidence and the opinion of the treating physician and did not seek clarification of relevant medical and psychological conditions. In addition, it is claimed that the ALJ refused to listen to the plaintiff and terminated the hearing. The government contends that substantial evidence supports the ALJ's opinion. For the reasons discussed in this report, it is recommended that the district find that the matter be remanded to the agency for further consideration now that plaintiff has a lawyer.

Plaintiff was born in 1957. At the time he filed the application, plaintiff was 48 years old, which the regulations define as a "younger individual." 20 CFR §404.1563. However, he was over age 50 at the time of the decision. Plaintiff's education appears to be a high school education plus technical training. He testified that he graduated from high school and obtained a technical college degree from Chrysler Corporation.[1] (Tr. 29)  Plaintiff testified that he was a supervisor, although his submissions to the state agency indicate no supervisory responsibilities. (Tr. 36, 94) The ALJ determined that plaintiff could perform unskilled work as a visual checker/inspector (1000 regional jobs), small products assembler (2500), and hand packager (2500 jobs). (Tr. 18)

**Standard of Review**

---

[1] However, there are other indications from third parties that he was enrolled in special education as a child (Tr. 382) and has limited ability to read and write. (Tr. 103, Teleclaim interview remarks by SSA employee; Tr. 108, Daily Activity Report by Plaintiff's brother indicating plaintiff unable to pay bills, count change, write checks, or handle money)

The Commissioner's final decision is subject to judicial review under 42 U.S.C. § 405(g), which provides, *inter alia:* "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938)). A court " 'must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record.' " *Colvin v. Barnhart,* 475 F.3d 727, 729-30 (6th Cir.2007) (quoting *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 528 (6th Cir.1997)). If the Commissioner's decision is supported by substantial evidence, the court must defer to that decision "'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Warner v. Comm'r of Soc. Sec.,* 375 F.3d 387, 390 (6th Cir.2004) (quoting *Wright v. Massanari,* 321 F.3d 611, 614 (6th Cir.2003)).

Disability is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Id.* § 1382c(a)(3)(A). An individual will only be determined to b under a disability if his impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Id.* § 1382c(a)(3)(B).

The ALJ, in determining whether a claimant is disabled, conducts a five-step analysis:

1. If claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Commissioner*, 127 F.3d 525, 529 (citing 20 C.F.R. § 404.1520).

Under the five-step inquiry, the claimant bears the burden of proof through the first four steps, and the Commissioner bears the burden of proof at the final step. *Jones v. Comm'r of Soc. Sec.,* 336 F.3d 469, 474 (6th Cir.2003). To prevail at step five, the Commissioner must "identify a significant number of jobs in the economy that accommodate the claimant's residual functioning capacity," *id.,* taking into account factors such as age, education, and skills. *Walters,* 127 F.3d at 529.

The issue before the court is whether to affirm the Commissioner's determination. In *Brainard v. Secretary of HHS*, 889 F.2d 679, 681 (6th Cir. 1989), the court held that:

> Judicial review of the Secretary's decision is limited to determining whether the Secretary's findings are supported by substantial evidence and whether the Secretary

employed the proper legal standards in reaching her conclusion. 42 U.S.C. §405(g); Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L. Ed. 2d 842 (1971). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L. Ed. 2d 126 (1938). The scope of our review is limited to an examination of the record only. We do not review the evidence *de novo*, make credibility determinations nor weigh the evidence. Reynolds v. Secretary of Health and Human Services, 707 F.2d 927 (5th Cir. 1983).

*Brainard,* 889 F.2d at 681.

**The Hearing**

Plaintiff testified at the hearing that he was hurt on the job in a conveyor accident in 1988. (Tr. 35) He last worked April 29, 1990. He stated that the income reflected in subsequent years is from lawsuits. (Tr. 35) The medical evidence shows that plaintiff has frequent complaints of back and knee pain, long term use of Vicodin and other prescription narcotic pain medications, and has some mental difficulties including alcohol abuse and anti-social personality. Harry Cynowa testified as a vocational expert. He stated that plaintiff's past work in the auto industry was light or medium work. (Tr. 37) The ALJ propounded a hypothetical that asked Mr. Cynowa to assume a person like plaintiff who was limited to light work with the ability to only occasionally climb or stoop; occasionally balance, kneel, crouch and crawl. The ability to deal with the public would be severely limited but not precluded. He wouldn't be able to function with co-workers or supervisors at anything more than a limited, but satisfactory, level. (Tr. 37) Such a person could do unskilled work as described above. (Tr. 38) Plaintiff interrupted and asserted that he was on pain medication. (Tr. 38) The ALJ found that if as result of that medication plaintiff experienced sleepiness or if his concentration and attention were affected such that he would miss work more than two days a month, then all work would be precluded.

5

Brad McDonald, the social worker who drove plaintiff to the hearing also testified. (Tr. 39) Mr. McDonald indicated that he is employed with St. Clair County Community Mental Health and had been working with plaintiff on coping skills, stress management, and issues related to plaintiff's depression. (Tr. 39-40) Plaintiff was referred by the Blue Water Independent Living Center. Id. Plaintiff generally takes care of himself, but has been dealing with issues of grief from loss of his mother and other relatives. In addition, he took a fall in the bathtub and is frustrated with the loss of his ability to repair motors, to build things, to do woodworking, and other things that he used to do. So, the social worker is involved with supporting his emotional health. (Tr. 41) He is able to otherwise handle his finances and basic needs.

At the conclusion of the hearing, plaintiff interrupted and stated that the ALJ had said that he (plaintiff) would get to talk. "You said I would have my turn, I thought." (Tr. 41) The ALJ stated that he had the medical records, had heard plaintiff's testimony, and had the answers to his questions. He was prepared to make a decision after reviewing the record one more time. Plaintiff continued: "Can you give me two minutes of your time before you. . . I'd like to say something ". (Tr. 42-3) The ALJ stated: "This hearing is concluded. The record's closed. We're off the record." The transcript ends there. (Tr. 43)

**Medical & Other Evidence**

The report from plaintiff's brother indicates that plaintiff has severe difficulties being around people, that he can't walk more than ten yards, uses a four-prong cane and a sometimes a walker, and cannot follow written or oral instructions. (Tr. 110-114) He is also unable to care for himself. (Tr. 115) The medical evidence does appear inconsistent with that conclusion. It is true that the numerous medication records show that plaintiff takes a variety of medications, including

Simvastatin, Alprozolam, Verapamil, Temaepan, Prilosec, and Hydrocodone. (E.g. Tr. 158-160) Plaintiff was treated by Dr. Cobb following his left knee injury in November, 1988. According to those records, he reported that he slipped and fell off a ladder while at work at Chrysler. Plaintiff had arthroscopic surgery on his knee in January, 1989 followed by physical therapy. (Tr. 165) A bone scan from Beaumont Hospital in Troy in 1989 showed abnormality in the left knee, consistent with the affect for ligament surgery. (Tr. 161) A left knee arthrogram showed a Baker's cyst but no other significant abnormality. (Tr. 162) He continued to have significant pain through at least February, 1990. (Tr. 166) In May, 1990, x-rays and MRI of the left knee showed a small amount of fluid in the joint. (Tr. 163) He reported low back pain as well. (Tr. 168)

Plaintiff had further treatment for this problem and in 1997 reported low back strain and pain. He was treated with Flexeril. Flexion and strength were good but he had pain on lateral spine rotation to the left. (Tr. 206) In October, 1997 he was diagnosed with intermittent tendinitis in the left ankle and hypertension. (Tr. 207-208) In April, 1998, there was chronic pain in his left knee after medial meniscus tear repair. He was placed on work restrictions. (Tr. 209)

Documents from the Community Health Center in April, 2003 indicate that he has chronic back pain and has been treated with Vicodin "for years." (Tr. 222) X-rays of his knees from Port Huron in July, 2003 show no acute fracture of dislocation; there was mild joint space narrowing in the medial tibia. (Tr. 224) In September, 2003 he was examined by Dr. Manoucherhr Nikpour MD for shooting pain. The EMG was normal, the MRI revealed very mild spinal stenosis. A myelogram was to be performed. The provisional diagnosis was right lumbar root syndrome. (Tr. 212-213) The lumbar myelogram showed mild bulging of the annulus of the disc at all levels between L2-5 without spinal stenosis or nerve compression. The CT scan showed no abnormalities in the thoracic

spine and mild generalized bulging of the annulus at L2-2 and more prominent at L4-5. (Tr. 214-215) An epidural block was advised by Dr. Nikpour. (Tr. 216) Surgery was also recommended. (Tr. 217) He was placed on disability until December 1, 2003. (Tr. 218) On September 25, 2003, plaintiff had a partial laminectomy at St. Joseph's of Macomb. (Tr. 219) In October, 2003, plaintiff called the doctor because he wanted to have food delivered to the house and his wife was giving him a hard time. He was post-op from the laminectomy and was neurologically intact. (Tr. 221) The request for the prescription to require delivered food was declined. Id.

In August 2004, Susan VanDellen, DO writes that she has treated plaintiff for approximately ten years. She noted his past medical history and continued chronic pain. Dr. VanDellen placed restrictions on him in the past and recommended that they be continued: "lifting weight limit of 20 pounds, no climbing, bending, or squatting; four hours sitting and four hours standing daily, restricted to a 40 hour work week in an oil free/non-slippery floor environment. Plaintiff may take his pain medication during the day because it did not cause side effects." (Tr. 234) In March, 2005, it was noted that plaintiff was harassing the front desk personnel at Dr. VanDellen's office and showed up intoxicated. He asked for letters to be dictated to his lawyer and he was advised that he could no longer continue as a patient there. (Tr. 239-240)

In April, 2006, Nick Reina, MD wrote to Senthil Raju, MD regarding plaintiff's physical conditions including back and left knee pain. (Tr. 265) As summarized by Dr. Reina, plaintiff had seen numerous other doctors.[2] Dr. Reina adopted Dr. VanDellen's previous restrictions, though Dr. Reina also prescribed a cane and lifting restrictions 10 pounds frequently and 20 pounds

---

[2]It appears that plaintiff was diagnosed in April, 2006 with a narcotic dependency and referred to Dr. Reina for pain management. (Tr. 273)

occasionally. Standing was limited to two hours at a time and then sitting for 30 minutes. Dr. Reina thought that the standing restriction would make him unemployable. Dr. Reina continued plaintiff on Vicodin ES and refills every thirty days. (Tr. 265-266) Plaintiff had been taking Vicodin ES four times a day (qid) but Dr. Reina intended to change that to Vicodin HP if plaintiff were going to continue to take the medication that frequently. (Tr. 267) Dr. Reina opined that plaintiff would be limited to sedentary work with frequent breaks. (Tr. 268) Plaintiff called the office and "wants you [Dr. Reina] to state in the letter that he is disabled." (Tr. 269)

In April, 2006, Dr. Raju wrote to plaintiff's attorney regarding plaintiff's condition. Dr. Raju stated that he agreed with the prior restrictions–weight limit of 20 pounds, no climbing, bending, or squatting four hours standing, four hours sitting, 40 hour work week. No slippery floors. (Tr. 274)

Plaintiff was seen for a psychological evaluation by Terry Rudolph, Ph.D. in August, 2006. He has never been psychiatrically hospitalized nor involved in outpatient counseling or substance abuse services. He said that he takes three Vicodin a day, Xanax, Ambien, Caltan, Viagra, Allegra, and an antacid. (Tr. 276) Plaintiff states that he has an associates degree in Robotics from Ford Tractor and is a licensed electrician. He has never been arrested or jailed and denied any use of alcohol, cigarettes, or other substances. Id. He volunteers with the Sheriff's Department and does a lot of paperwork for them. Id. He fishes and does a lot of reading. His kids come over and he plays darts, air hockey and pool. He stays active. He states that he is independent, shops often with a friend, made his dinner such as meatloaf, and does not require any assistance with anything. He arrived 45 minutes early and came in a cab. He brought a cane but his gait appeared normal. He had a neoprene sleeve on his knee. He had no difficulty sitting down or getting up. He denied any closed head injuries, seizures, or panic attacks. (Tr. 278)

9

Plaintiff was seen for a medical evaluation by Tama Abel, M.D., a family practitioner. (Tr. 279-283) Plaintiff was noted to be a "confusing and extremely poor historian. He has a tendency to speak nonstop and frequently does not listen to the question posed to him . . . He is very difficult to redirect." He brought incomplete paperwork, some of which related to persons other than himself, he spoke loudly in a voice that "bordered on anger." Upon examination, he had full range of motion in both knees and complains of pain in his left knee only with left hip internal rotation at 20 degrees. Most of the pain was exterior to the knee joint. The knee brace seemed unnecessary but it did not impair any function in any event. He walks with an antalgic gain without an assistive device, and he does not need an assistive device. He avoids activities such as climbing, bending, and stooping, but could do them on occasion without developing severe, persistent knee pain. (Tr. 282) He was able to function and maintain a daily routine. With respect to his lower back, he reports and medical evidence seemed to confirm that he had surgical intervention to his lumbar spine some 18 months earlier which the doctor felt was suggestive of degenerative disc disease. Use of the back corset was discouraged and exercise and weight loss was encouraged. Blood pressure was well controlled with his medical regime. No emotional instability was noted with respect to his depression. He is not taking any medication for his condition. Because of his unusual affect and questions regarding his ability to provide a medical history, a formal psychiatric evaluation was recommended. The doctor stated that "It does not appear that this condition interferes with his daily activities." (Tr. 283) He was able to function, to carry out a daily routine, and appeared "able to understand, carry out, and remember instructions and respond appropriately to outside pressures, if he were so motivated." Id.

A psychiatric review conducted in August, 2006, concluded that plaintiff had somatoform disorder and personality disorder, but that these were non-severe impairments. (Tr. 286) Reference was made to his having pain and a personality disorder not otherwise specified. (Tr. 293) The mental impairments had a mild effect on his daily activities, social functioning, and concentration and his GAF was assessed at 70, indicative of mild symptoms. Attention and concentration were intact, cognitive abilities were intact and sufficient to complete tasks, and the psychological difficulties were not significantly limiting. (Tr. 298)

A Residual Capacity Functional Assessment also in August 2006 regarding his physical abilities determined that he was able to perform light work. (Tr. 300-305)

Plaintiff was seen at a Health Medical Clinic in Warren by Dr. Banerji, MD, in September, 2007. The only physical limitation was that he cannot squat more than 40%. His hypertension is well controlled and no evidence of cardiac failure. He has an alleged history of GERD but no physical findings. He was depressed but his memory is good. He was in fair grooming and hygiene and responded well to the examining situation. (Tr. 310)

In August, 2007, plaintiff was in therapy with a social worker at Access Thumb agency. (Tr. 311) He was stressed and frustrated with his situation; the social worker provided encouragement and support. (Tr. 311-315) Efforts were made to improve plaintiff's coping skills, and some of the conversations appear slightly delusional (e.g. Gary reported that he was in the military but it was covert and could not talk about it; he was having recurrent nightmares and flashbacks to Vietnam.[3]) (Tr. 318,320) There were also frequent calls to the Blue Water Center for Independent Living, with some evidence of paranoia. (Tr. 319)

---

[3] At the hearing, he had denied to the ALJ that he had ever been in the military. (Tr. 30)

In September, 2007, plaintiff underwent a psychiatric evaluation for social security and for medication intervention. (Tr. 323-326) There is no history of hospitalizations. He described sitting in the house and watching TV for days on end. There was financial stress, suicide ideation, and insomnia. (Tr. 323) He states that he sued Chrysler, he was in the Golden Gloves at age 17, turned down a scholarship to Michigan State to be a linebacker, and suggests that he is a pro bass fisherman with plans to move to Florida if his house sells. He was being treated by Dr. Owczarzak as his primary care physician but he received a notice that said that he had to find another doctor. (Tr. 324) At the exam, he used a four prong cane and white back brace not tightly fashioned. There were loose association and some flights of ideas and he was a bit grandiose. Cognition seemed intact but insight and judgment limited. (Tr. 325) Cymbalta was prescribed for him. (Tr. 327) He continued with his therapeutic plan.

In January, 2008, Dr. Jande MD stated the plaintiff was disabled due to back pain and knee pain. (Tr. 343)

**Analysis of Plaintiff's Allegations and the Evidence**

1. *Plaintiff contends that the normal hearing protocol was not followed and that he was not accorded due process or a full and fair hearing, and that the ALJ refused to listen to the plaintiff and closed the hearing.*

Plaintiff appeared at the hearing without a lawyer. The ALJ advised him of his right to have an attorney present. Plaintiff declined. A claimant may waive the statutory right to counsel, and it appears that plaintiff did so here. *Coplen v. Social Sec. Admin.* 2010 WL 1526108 *5 (M.D.Tenn. 2010). Although plaintiff appeared without counsel, the ALJ honored plaintiff's request to have the social worker present and advised plaintiff of his rights to privacy in the hearing. The ALJ reviewed the evidence that had been submitted to him, including records from plaintiff's earlier application.

12

The ALJ asked plaintiff a number of relevant questions, but plaintiff responded non-responsively, discussing information regarding a lawsuit he had against Chrysler. The ALJ redirected plaintiff and continued to attempt to ascertain plaintiff's impairments, housing situation, ability to perform work and take care of himself. (Tr. 26-34) In addition to testimony from a vocational expert, the ALJ also questioned the social worker regarding plaintiff's abilities, both physical and mental. The ALJ did not take time to listen to plaintiff's additional statement at the end of the hearing, but did state that he had the medical records and testimony sufficient to make a decision. (Tr. 41-42)

As explained in *Coplen,* 2010 WL 1526108 *5, the ALJ has a "special duty" to develop fully the record of a claimant who appears without representation, and the reviewing court must scrutinize the record with care in such cases to ensure that the heightened duty was fulfilled. *Lashley v. Sec'y of Health & Human Servs.,* 708 F.2d 1048, 1051-52 (6th Cir.1983). *Lashley* involved a stroke victim with a fifth-grade education who alleged that the residuals from his stroke severely limited his activities. There was both medical and psychological evidence to support this claim. On appeal, he contended that the proceeding was "so superficial as to deny him due process." *Lashley,* 708 F2d at 1051. The court noted that there is "no bright line test for determining when the ALJ has assumed the role of counsel or failed to fully develop the record." *Id.* at 1052 The court noted that the hearing lasted a mere 25 minutes and was fully transcribed in 11 pages. The record here is not far off that mark, being about ten minutes and 12 pages longer. Although this is a much closer question, it cannot be said that there is "nothing in the record that would indicate that additional probing was needed by the ALJ because all of plaintiff's psychological assessments indicate that his mental condition does not interfere with his functioning." *See Coplen,* 2010 WL 1526108, 5. Plaintiff's GAF in 2006 was 70, reflective of some mild symptoms but generally well functioning.

See, DSM-IV 4th Ed. Page 32 (Tr. 16)   But, plaintiff was assessed at his intake at St. Clair County Community Mental Health with a GAF of 45 (serious symptoms) in 2007 (Tr. 326).  He began therapy with a social worker and seemed to improve but many of the symptoms were reported as related to alcohol abuse and it was reported that he had stopped drinking since his intake. (Tr. 328) There was still marked loss of functioning in several areas and a GAF of 40 in April 2009. (Tr. 380-383) It may be that at some point in time after his onset date, plaintiff's severe pain combined with his mental impairment and some seizure events rendered him disabled.  This may have been developed through his additional testimony which the ALJ declined to consider.

The court believes that ALJ should have permitted the plaintiff to make a statement, and that it cannot truly be viewed as harmless error in light of the most recent medical evidence after late 2006.  Nothing in the conduct of the ALJ as shown in the record that would indicate that he was biased or short-tempered.  As analyzed in *Coplen,* 2010 WL 1526108 *5, an ALJ is presumed to be unbiased unless there is a specific showing for cause to disqualify. *Schweiker v. McClure,* 456 U.S. 188, 195-196, 102 S.Ct. 1665, 72 L.Ed.2d 1 (1982). The burden of establishing a disqualifying interest "rests on the party making the assertion." *Id.* "[J]udicial remarks during the course of a [hearing] that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge" unless "they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible." *Liteky v. United States,* 510 U.S. 540, 555-556, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994)   However, in the absence of a lawyer, it appears that the record should have been more fully developed.

The court rejects that notion that the ALJ was obliged to re-contact treating physicians and psychologists.  The ALJ is not to be counsel for plaintiff as he is not to be biased against him.

14

Plaintiff was not represented by counsel either at the ALJ hearing or the Appeals Council. Given the evidence of mental impairments and evidence of deterioration, the record should be fully developed on remand, including testifying medical advisors if determined to be needed by the agency and determination of plaintiff's educational level.

*2. Substantial Evidence may well support plaintiff's ability to perform light work.*

Plaintiff alleges that the decision was not supported by substantial evidence because the ALJ ignored evidence that would have bolstered his claim. (Brief page 8) Essentially, plaintiff argues that the ALJ disregarded evidence from Critten Hospital regarding plaintiff's tonic-clonic seizure from alcohol withdrawal in 2008. (Tr. 366-379) This evidence is the only evidence upon which he relies and substantially post dates plaintiff's alleged onset date of 1990. The medical evidence and opinions of Dr. VanDellen, Dr. Barker, Dr. Reina and Dr. Rudolph and the objective findings appear to support the ALJ's determination up to August 2006, plaintiff can perform a limited range of light activity and generally functioned well mentally. After August 2006, it appears that plaintiff's condition may have deteriorated, with the effects of alcohol related seizures, alcohol abuse, and ongoing mental or physical impairments. In June of 2007, plaintiff reached age 50. His age and medical condition should be considered on remand.

**Conclusion**

Accordingly, it is recommended that the matter be remanded to the Commissioner for further consideration and full development of the record.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a

waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

S/Virginia M. Morgan  
Virginia M. Morgan  
United States Magistrate Judge

Dated: August 18, 2010

---

**PROOF OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System and/or U. S. Mail on August 18, 2010.

s/Jane Johnson  
Case Manager to  
Magistrate Judge Virginia M. Morgan